MICHAEL, Circuit Judge,
dissenting:
The majority’s decision to affirm the denial of class certification means that Jefferson-Pilot Life Insurance Company will never be held to account if it discriminated against 1.4 million African-Americans by charging them higher premiums for industrial life insurance than it charged whites. This case makes sense only as a class action because the liability issues are complex and the maximum loss suffered by any class member “is at most, hundreds of dollars.” J.A. 280. My point is hardly “puzzling.” See ante at 328 n. 20. As the Supreme Court has said, “The policy at the very core of the class action mechanism is to overcome the problem that small *333 recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.” Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).
The majority errs by accepting at face value Jefferson-Pilot’s argument that class certification is precluded because the Company’s statute of limitations defense raises questions that must be decided individually for every class member. The facts tendered at the class certification stage reveal that the Company has at most a defense that the policyholders had constructive knowledge of their injury within the limitations period. The constructive knowledge theory is based solely on the assertion of the Company’s expert that there was widespread publicity, both nationally and in the Southeast, about the dual-rate practices of white-owned insurance companies. The record, however, does not contain any facts to suggest that there are individual differences in what class members “could have known” about the dual-rate practices. Thus, the limitations defense can be determined on a classwide basis, and the Rule 23(b)(3) requirement that common issues predominate over any individual ones is met. For this reason, I respectfully dissent.
I.
The facts alleged, if proven true, portray a grievous wrong against well over a million African-Americans. From the early 1900s until the mid-1970s, Jefferson-Pilot (or its predecessors) charged African-Americans higher premiums than similarly situated whites for industrial life insurance. These policies have a low face value (often less than $500), with premiums collected by company agents at the home of the policyholder on a weekly or monthly basis. The Company sold these policies to 1.4 million African-Americans in Georgia, North Carolina, South Carolina, and Virginia. (Ninety percent of the policies were sold in North Carolina.) In 2000 Jefferson-Pilot declared all active industrial life policies to be paid up, and no further premiums were collected. About 45,000 of the policies were still in effect as' of 2004. The plaintiffs allege the Company targeted occupations and geographic areas known to have a high concentration of African-Americans. More specifically, the plaintiffs allege that the Company “targeted low income, impoverished, and disadvantaged African-Americans who typically were unsophisticated with respect to life insurance.” J.A. 29 ¶ 17. Finally, it is alleged that African-Americans did not know and could not have reasonably known they were charged higher premiums than whites because the Company engaged in a pervasive scheme to conceal this practice. These discriminatory practices, the plaintiffs allege, violate the Civil Rights Act, 42 U.S.C. §§ 1981-1982. The complaint requests injunctive relief, equitable restitution, and punitive damages. In its defense, Jefferson-Pilot maintains that the higher rates charged to African-Americans were based on mortality tables. The Company also asserts the statute of limitations as a defense.
The named plaintiffs seek to represent a class of 1.4 million African-Americans who bought industrial life insurance from Jefferson-Pilot. When the plaintiffs moved for class certification, a key issue was whether the Company’s statute of limitations defense required individualized determinations. At the certification stage, the parties offered the following evidence concerning the nature and merits of the Company’s limitations defense. Four potential class members were deposed, and none had actual knowledge of his or her injury outside the limitations period. In *334 addition, both sides submitted expert reports from historians about the availability of public information concerning discriminatory life insurance rates. The plaintiffs’ expert, Robert J. Norrell, Ph.D., opined that past practices of race discrimination in life insurance underwriting did not become common knowledge among any subset of the American public prior to the year 2000, when this action was filed. Dr. Norrell bases his conclusion on (1) the failure of Jefferson-Pilot and similar companies to inform policyholders of their discriminatory practices and (2) the absence of discussion of the issue in widely read historical literature on American race relations. Although there were some government reports, law review articles, and limited media coverage concerning discriminatory pricing, Norrell found no evidence to show widespread public awareness of the issue. On the other hand, Jefferson-Pilot’s expert, Henry M. McKiven, Ph.D., offered the opinion that publicity about discriminatory pricing was widespread nationally and in the Southeast. Dr. McKiven says that this information was available in books, scholarly journals, newspapers, and magazines. He also says that black-owned insurance companies, civil rights organizations, and unions spread the word about discrimination by white-owned insurance companies. McKiven opined that an African-American living in the Southeast could have become aware of the discriminatory pricing. Relying on McKiven’s report, the district court found that Jefferson-Pilot’s limitations defense would require individualized inquiry for each class member. It therefore held that our cases of Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir.1998), and Gunnells v. Healthplan Services, Inc., 348 F.3d 417 (4th Cir.2003), preclude class certification. The plaintiffs appeal this ruling.[1]
*335 II.
A.
The district court found that Jefferson-Pilot’s statute of limitations defense requires individualized proof as to each class member. This finding is erroneous as a matter of law, and it misled the court to conclude that Rule 23(b)(3)’s predominance requirement cannot be met here. The record shows that the limitations defense presents not individualized questions, but common ones that can be answered on a classwide basis. If the district court had undertaken the rigorous analysis of the record required by Gariety v. Grant Thornton, LLP, 368 F.3d 356 (4th Cir. 2004), it could not have concluded that the statute of limitations defense presents individualized questions.
In Gariety we noted that “Rule 23(b)(3) on its face requires [a district] court to ‘jfind [ ] that the questions of law or fact common to members of the class predominate over questions affecting only individual members.’ ” Id. at 365 (emphasis and second alteration in original). In making the necessary findings, a district court is not required “simply to accept the [parties’] allegations at face value,” for “sometimes it may be necessary ... to probe behind the pleadings.” Id. at 365-66 (citation omitted). Otherwise, there would be nothing to prevent parties from making unsupported allegations in order “to bolster or undermine a finding of predominance.” Id. at 365 (citation omitted). In all events, a district court has the responsibility “for taking a ‘close look’ at relevant matters” and “for conducting a ‘rigorous analysis’ of such matters” before making the findings required by Rule 23(b)(3). Id. (citation omitted). We recognized in Gariety that findings made under Rule 23 may “overlap [with] findings that will have to be made on the merits.” Id. at 366. This is permissible, we said, because findings made to resolve class certification questions do not bind the ultimate decisionmaker’s finding on the merits. Although the district court in this case went beyond the pleadings and examined the report of the defense expert, the court accepted too readily the expert’s unsupported conclusion that it was necessary to make an individual inquiry about each class member’s access to the available information. The “rigorous analysis” required by Gariety demonstrates that the limitations defense can be determined on a classwide basis.
Jefferson-Pilot raises both actual and constructive knowledge as the basis for its limitations defense, and it argues that neither theory is capable of classwide adjudication. I disagree. With respect to the Company’s actual knowledge theory, there is no evidence of actual knowledge to support the district court’s finding that individualized inquiry is necessary to adjudicate the limitations defense. The Company deposed four class representatives, and their testimony reveals that not *336 a single one knew Jefferson-Pilot charged African-Americans higher premiums because of their race.[2] The Company did not seek to establish actual knowledge by deposing additional African-American policyholders in the four states where it sold industrial life policies. In addition, the expert’s report cites no evidence to show that any class member actually knew of discriminatory pricing. Thus, the Company has utterly failed to demonstrate that individualized inquiry into actual knowledge is necessary because, as the record stands, no one had actual knowledge. By accepting Jefferson-Pilot’s actual knowledge theory at face value, the district court allowed the Company to use an unsupported allegation “to [forestall] a finding of predominance.” See Gariety, 368 F.3d at 365.
Jefferson-Pilot’s more plausible argument is that the class members had constructive knowledge of the challenged conduct outside the limitations period. A federal claim accrues under the constructive knowledge theory when the plaintiff “possessed sufficient facts to ... have reason to know of the alleged injury.” Brooks v. City of Winston-Salem, N.C., 85 F.3d 178, 181 (4th Cir.1996). The claim accrues, in other words, when the plaintiff “should have known (or been put on inquiry notice of) [his] injury.” Thompson v. Metro. Life Ins. Co., 149 F.Supp.2d 38, 52 n. 12 (S.D.N.Y.2001). The district court found that the Company’s expert “presented a strong prediction that there were numerous sources of evidence available during the relevant period which could have alerted class members to the fact that the practices now complained of were common in the industry.” J.A. 296 (emphasis added). To begin with, this finding does not incorporate the correct legal standard, which is whether plaintiffs “ha [d] reason to know,” Brooks, 85 F.3d at 181, or “should have known,” Thompson, 149 F.Supp.2d at 52 n. 12, of then* injury. More importantly, the finding, which is based entirely on the report of the Company’s expert, does not establish that adjudication of the constructive notice limitations defense requires individualized proof.[3]
Dr. McKiven, Jefferson-Pilot’s expert, asserts there was “widespread publicity,” both nationally and regionally, about the race-based “pricing differential.” J.A. 82, 101. This assertion suggests that the *337 same kind of information was available classwide. In his report McKiven identifies about forty newspaper and magazine articles and about twenty books, scholarly articles, and reports published over a ninety-five-year period (1906-2001) that discussed dual rates or race discrimination in the sale of insurance. Three of the magazines, Time (one article in 1964), Ebony (articles in 1946, 1954, 1969, and the early 1970s), and Black Enterprise (articles in 1973, 1975, and 1977), have national circulation. A few of the cited newspaper articles appeared in the national press, and a dozen or so articles appeared in southeastern newspapers.
Dr. McKiven also refers to other information on the issue. Black-owned insurance companies encouraged their agents to speak out in churches and in their sales calls about the race-based pricing of white-owned companies. The Congress of Industrial Organizations issued results of a survey indicating that African-Americans did not receive equal treatment from white-owned insurance companies. The NAACP and the Urban League published a few articles in their national magazines addressing the dual-rate practices. Finally, at three congressional hearings testimony was presented on the issue. All of these efforts had a broad regional or national focus.
Dr. McKiven thus concludes that “widespread publicity about [higher life insurance rates for African-Amerieans] existed in the Southeast” and nationally. J.A. 82. Tellingly, he offers no facts in his twenty-page report to suggest that there are individualized differences in what the class members “could have” known about the dual-rate practices. In other words, McKiven does not say that there was any variation among individual class members as to what they could have known. This lack of variation makes classwide treatment appropriate.
This case, then, is like the case presented on appeal in In re Monumental Life Insurance Co., 365 F.3d 408 (5th Cir.), cert. denied, 543 U.S. 870, 125 S.Ct. 277, 160 L.Ed.2d 117 (2004), where the court held that the insurance companies’ statute of limitations defense — whether African-American plaintiffs had constructive knowledge that they were discriminated against in the purchase of industrial life insurance — could be decided on a class-wide basis. Like Jefferson-Pilot, the insurance companies in the Monumental appeal relied on “widespread media reporting” that conveyed the same information about the issue in both national and local markets. Id. at 421. The majority’s efforts to distinguish the Fifth Circuit’s opinion in Monumental fail. The majority says:
Jefferson Pilot does not argue [as did the defendants in Monumental] that the district court should hold that widespread media treatment of the issue provided a. reasonable person with sufficient information to give him either actual or constructive knowledge. Instead, it argues that individual class members were actually exposed to sufficient information to give them either actual or constructive knowledge of Jefferson Pilot’s dual-rate practices outside the limitations period.
Ante at 326. Thus, the majority concludes that “the district court here must conduct individual inquiry into the information each class member actually possessed to determine whether each class member had actual or constructive knowledge of Jefferson Pilot’s dual-rate practices.” Ante at 326. The problem with this argument is that Jefferson-Pilot has nothing but widespread media treatment and publicity to rely on for its defense that, in the majori *338 ty’s words, class members were “exposed to sufficient information to give them either actual or constructive knowledge.” Ante at 325 - 26. Jefferson-Pilot’s expert said the information about the discrimination was “widespread,” J.A. 82, and he offers nothing to suggest that the information available varied among class members. The Company has thus offered nothing to show that the limitations defense turns on facts that are specific or individual to each class member. The Company has no choice but to proceed like the insurance companies in the Monumental appeal, which relied on “the national media market” and local publications (including newspapers), with both arenas giving the discrimination issue consistent treatment. Because there was no attempt to “geographically splie[e] constructive notice,” the Fifth Circuit had “no difficulty concluding that whether plaintiffs were provided constructive notice is an issue that can be decided on a classwide basis.” Monumental, 365 F.3d at 421. The same reasoning should control here.
The Fifth Circuit remanded the Monumental case to the Eastern District of Louisiana for further proceedings on class certification. The plaintiffs then renewed their motion to certify a class against two insurance companies that administrated industrial life insurance policies issued by more than 280 companies. In response the insurance companies offered evidence showing “regional differences in media treatment” of discriminatory pricing and an expert who, according to the Louisiana district court, “proved that whether and when any individual would have learned about industrial life insurance pricing practices depends on where they lived, the time period, what newspapers and articles they read, and what oral conversations they had in local churches or through other social networks.” In re Indus. Life Ins. Litig., MDL No. 1371, slip op. at 14, 2006 WL 372004, *-(E.D.La. Jan. 25, 2006) (order denying class certification) (internal quotation marks omitted and emphasis added). As a result, the district court in the Monumental remand concluded that individualized proof on the limitations issue was required and that Rule 23(b)(3)’s predominance requirement had not been satisfied. Id. slip op. at 14-15, 365 F.3d 408, 417, 2004 WL 718806, *6.
What the defense expert “proved” on remand in Monumental underscores what is lacking in this case. Here, the evidence concerning the information about the dual-rate practices focuses on its wide-spread dissemination rather than on whether the information available varied from place to place or from time period to time period. Accordingly, the district court’s finding here — that “numerous sources available ... could have alerted class members” to the discriminatory pricing, J.A. 296 — does not establish that individualized inquiry is necessary. I would not, however, foreclose the possibility of the district court’s later reconsideration of the issue of whether the limitations defense presents individual questions. If discovery on the merits was to show that information about the dual-rate practices varied materially from place to place or from time period to time period in the four relevant states, then the issue of any class certification could be revisited by the district court.
In sum, as the record now stands, the statute of limitations defense presents issues that are common to the class. In addition, the plaintiffs’ direct case involves a collective or common claim that the Company engaged in a single, sustained course of intentional discrimination against African-American policyholders by charging them higher rates for industrial life insurance than similarly situated whites. *339 Rule 23(b)(3)’s requirement that common issues predominate is therefore satisfied.
B.
Rule 23(a)’s prerequisites for a class action, numerosity, commonality, typicality, and adequacy of representation are also satisfied in this case. See Fed.R.Civ.P. 23(a). First, there is no dispute that the proposed class meets the numerosity requirement. Second, as I have just demonstrated, the plaintiffs’ affirmative case of discrimination and Jefferson-Pilot’s statute of limitations defense both present questions that are common to the class. Third, because the claims of the representative parties are the same as the claims of the class, the typicality requirement is satisfied. Fourth, the district court concluded that any potential representational conflicts could be avoided by limiting the class to “insureds,” and “if necessary, by sub-classing.” J.A. 294. Thus, “the representative parties will fairly and adequately protect the interests of the class.” Fed. R.Civ.P. 23(a)(4).
The prerequisites of Rule 23(a) and the predominance requirement of Rule 23(b)(3) have been met. I would therefore vacate the district court’s order denying class certification. In its order denying class certification, the district court briefly mentioned “[additional Rule 23(b)(3) [concerns,” J.A. 303, relating to whether the class action method would be superior in this case. Because these concerns were fueled in large measure by the district court’s erroneous finding that the statute of limitations defense could not be resolved on a classwide basis, I would remand to allow the district court to reconsider the Rule 23(b)(3) superiority issues.

. Contrary to the district court’s view, Broussard and Gunnells are of little relevance here because those cases presented significant individual issues while this case does not, as I explain in part II. The two cases are worth discussing, however, because the district court’s restrictive reading of them led it to the erroneous conclusion that the Fourth Circuit is quick to deny class certification whenever individual issues are present. Both Broussard and Gunnells, however, are faithful to the text of Rule 23 and allow class certification when questions "common to members of the class predominate over any questions affecting only individual members.” Fed.R.Civ.P. 23(b)(3).
In Broussard a class of former and current Meineke muffler shop franchisees was awarded judgment against the franchisor on various claims, including breach of contract, fraud, and negligence. We reversed certification of the class because none of Rule 23(a)'s four prerequisites was satisfied. The lack of adequate representation was our main reason for reversal, but we also found that the central issues, including whether the statute of limitations was tolled, presented individual questions. We said in Broussard that "tolling the statute of limitations on each of [the] plaintiffs' claims depends on individualized showings” because the "representations made to each franchisee varied considerably.” 155 F.3d at 342. After concluding that the limitations question was not common to the class, we added the following statement: "As the Ninth Circuit has recognized, when the defendant's 'affirmative defenses (such as ... the statute of limitations) may depend on facts peculiar to each plaintiff’s case,’ class certification is erroneous.” Id. (quoting In re Northern Dist. of Cal. Daikon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 853 (9th Cir.1982)). At least two courts of appeals have suggested that in malting this statement we were flirting with a per se rule against class certification when individual affirmative defense issues are presented. See Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 n. 4 (1st Cir.2000); In re Linerboard Antitrust Litig., 305 F.3d 145, 161 (3d Cir.2002). In the same vein, the district court here read the Broussard statement to mean "[t]he Fourth Circuit has specifically found that individual issues preclude class treatment.” J.A. 292. Although the statement has understandably grabbed attention, it was not our holding. Indeed, if it had been, it would *335 have conflicted with Rule 23(b)(3), which allows class action status for cases presenting individual questions so long as common questions predominate. Our holding in Broussard was simply that the class did not meet Rule 23(a)’s requirements.
In Gunnells purchasers and beneficiaries of a defunct multi-employer health plan sued the claims administrator for breach of duty and the insurance agents who marketed the plan for negligence, fraud, and breach of contract.
We reversed certification of a class action against the insurance agents because the claims of the plaintiffs and the affirmative defenses of the agents, taken together, presented too many issues requiring individualized inquiry. Gunnells, 348 F.3d at 434-38. Common questions did not predominate.
In sum, neither Broussard nor Gunnells stands for the proposition that the existence of individual issues precludes class certification when common issues predominate.

. The majority contends that ''[t]he very fact that [the plaintiffs] ask us to inspect their individual deposition testimony ... reveals that resolution of the statute of limitations defense will ... require the trier of fact to examine the particular circumstances of each individual class member.” Ante at 323. The majority is mistaken. Inspection of the deposition testimony is necessary under Gariety, which requires a district court to take a close look at the evidence proffered at the certification stage "to identify the nature of the issues that actually will be presented at trial.” Gariety, 368 F.3d at 365 (quoting Fed.R.Civ.P. 23 advisory committee notes). This inquiry assists the court in deciding whether a claim or defense actually presents common questions.

. The majority suggests my analysis ignores that the plaintiffs have the burden of establishing that the requirements of Rule 23 are satisfied. See ante at 324. To the contrary, my analysis places the burden of producing class certification facts, or pointing out the lack of such facts, in proper context. Here, once the plaintiffs offered facts sufficient to show that there are common questions that predominate, the burden shifted to Jefferson-Pilot to rebut those facts. See 3 Alba Conte & Herbert Newberg, Newberg on Class Actions § 7:23, at 74-75 (4th ed. 2002). The Company's evidence not only failed to show that its statute of limitations defense presented individual questions, its evidence indicated just the opposite — that the defense presents common questions. The Company’s evidence thus affirmatively assists the plaintiffs in their burden to show that the action is proper for class certification.